### Commonwealth v. Eastern Securities Co., Appellant.

Argued May 25, 1932. Before FRAZER, C. J., SIMP-SON, KEPHART, MAXEY, DREW and LINN, JJ.

*George Ross Hull*, of *Snyder, Miller, Hull & Hull*, for appellant.—In arriving at the taxable value of the capital stock of A, a domestic corporation, which owns shares of stock of other domestic corporations which have paid or are liable to pay a tax on their capital stock, the accounting officers of the Commonwealth should allow a deduction or credit equal to the full amount at which the shares so held have already been taxed, and should deduct such amount from the actual value in cash of the capital stock of the A corporation, even though the deduction is equal to or greater than said value and results in relieving the A corporation entirely from the payment of any capital stock tax: Com. v. P. R. R., 297 Pa. 308; Callery's App., 272 Pa. 255;

Lycoming Co. v. Gamble, 47 Pa. 106; McKeen v. Northampton Co., 49 Pa. 519; Whitesell v. Northampton Co., 49 Pa. 526; Com. v. Coal Co., 156 Pa. 488; Com. v. C. & N. Co., 162 Pa. 603; Com. v. Furnace Co., 268 Pa. 283; Missouri v. Gehner, 281 U. S. 313.

*John Robert Jones,* Special Counsel, with him *William A. Schnader,* Attorney General, for appellee.—The position of the Commonwealth is that the nontaxable shares of stock were to be eliminated entirely from consideration because they were nontaxable in accordance with the decision of this court in the case of Com. v. Coal Co., 156 Pa. 488, which was expressly approved by this court in its decision in the case of Com. v. R. R., 297 Pa. 308.

The capital stock tax, therefore, is a tax on the assets and property of a corporation represented by its capital stock: Com. v. Oil Co., 101 Pa. 119; Com. v. R. R., 188 Pa. 169.

The capital stock tax is a tax on the assets or property at their representative capital stock value and such value is a fact question. The rate of the tax is five mills on each dollar of the actual value of the capital stock, not five mills on each dollar of the actual asset or property value.

The findings of fact by the lower court were, as appears from the testimony presented by the Commonwealth, from the report of the appellant and the stipulation as to facts, founded on sufficient evidence and therefore, under the decisions of this court, are conclusive: Frank B. Hall & Co., Inc., v. Lyon, Singer & Co., 286 Pa. 119; McDonald Construction Co. v. Gill, 285 Pa. 305.

The taxable value of the capital stock is determined without consideration of the nontaxable shares of stock owned by the coal company: Com. v. Coal Co., 156 Pa. 488; Com. v. C. & N. Co., 162 Pa. 603.

OPINION BY MR. JUSTICE LINN, September 26, 1932:

Appellant, a holding company, dissatisfied with the settlement of capital stock tax made by the accounting officers of the Commonwealth for the year 1928, appealed to the court below. The case was tried without a jury pursuant to the Act of April 22, 1874, P. L. 109, and resulted in a tax of $106.57.

Appellant complains of unauthorized double taxation, and contends it should pay no capital stock tax, although possessed of taxable property. It had assets as follows:

| | |
|---|---|
| 1, shares of stock of Pennsylvania corporations taxed to the corporations that issued them at ... | $563,540.44 |
| 2, bonds of other corporations .......... | 7,880.33 |
| 3, cash and current assets ............. | 21,875.03 |
| Total assets ................... | $593,295.80 |

It has an issued capital stock of $150,000 par; reported indebtedness of $92,513.26, consisting of bills and accounts payable, $90,000, and accrued liabilities not due, $2,513.26. It also has a large surplus. It paid $7,500 in dividends in 1928, and had paid the same sum for a number of years. In 1928, its net income was $24,916, and during the preceding five years, its average net income exceeded $20,000 a year. No sales of its shares during the tax year were reported.

In the court below a stipulation of facts was filed. In addition to the reports made by the corporation, the settlement of the accounting officers, and the stipulation, the record contains the evidence of a witness, the deputy secretary of revenue, called by the Commonwealth.

There can be no doubt that the assets included in the items "bonds of other corporations" and "cash and other current assets," $29,755.36, are taxable, and, for convenience, we shall refer to them as "taxable asset." Appellant agrees that ordinarily they would be taxable, but contends that, for a reason to be considered later in this opinion, they should not be taxed.

The statute provides, inter alia, that the capital stock value shall be, "second, not less than the price or value indicated or measured by net earnings or by the amount of profit made and either declared in dividends, expended in betterments, or carried into the surplus or sinking fund; and, third, not less than the actual value indicated or measured by consideration of the intrinsic value of its tangible property and assets, and of the value of its good will and franchises and privileges, as indicated by the material results of their exercise, taking also into consideration the amount of its indebtedness. ...... If the auditor general and state treasurer, or either of them, is not satisfied with the appraisement and valuation so made and returned, they are hereby authorized and empowered to make a valuation thereof, based upon facts contained in the report herein required, or upon any information within their possession or that shall come into their possession, and to settle an account on the valuation so made by them for the taxes, penalties, and interest due the Commonwealth thereon......": Act of May 4, 1927, P. L. 742. In Com. v. P. R. R., 297 Pa. 308, 317, we said: "So that the value of capital stock is not a matter of strict formula but a matter of judgment. 'Common sense and practical every day business experience are the best guides for those entrusted with the administration of tax laws. Taxation is a practical and not a scientific problem': Phila. & Reading Coal & Iron Co. v. Northumberland Co. Comrs., 229 Pa. 460, 471 [79 A. 109]."

The deputy secretary of revenue, on the witness stand, was asked to give "the taxable value of [appellant's] capital stock in the light of the nontaxable assets there [in the reports and stipulation], consisting of the bonds of other companies and the cash and current assets," and replied that "it was as shown in your stipulation $21,-314." He stated that he would make the same valuation even "if you disregard the apportionment method and eliminate, from consideration of the valuation here, the

ownership of the shares of other Pennsylvania corporations, which are admittedly nontaxable......" In arriving at his valuation, he testified in cross-examination that he "took into account, first, the type or character of the business of the corporation, which is one of an investment company, that is, in a classification of a very large number of brokerage or investment companies, sort of a personal feature about them; the business requires a very small, if any, investment in tangible property, they may have no real estate, no machinery of course, no equipment and fixtures in many cases except little office furniture; in most cases their assets consist entirely of intangibles by way of investments which change constantly from year to year, some bills and accounts receivable, cash, I considered that phase of it; the result of their operations during the year, in the first place, their gross income, their net income, their dividends, the general result of their operations as a going business during the year." He gave other testimony to the same general effect.

Among the findings of fact made by the learned court below were the following: "The asset consisting of 'Bonds of other companies' of the value of $7,880.33 and the asset consisting of 'Cash and Current Assets' of the value of $21,875.03 set forth in the general balance sheet of the Capital Stock Report of the defendant, are taxable assets of a total value of $29,755.36. 5. Though the evidence establishes a capital stock value of taxable assets in excess of $21,314, nevertheless, by reason of the fact that such was the value in the original corrected settlement, the Commonwealth makes no claim for tax upon a higher value. 6. The capital stock value of the taxable assets is $21,314." Those findings are supported by evidence, have the approval of the court in banc, and, therefore, are accepted in this court: Hall & Co. v. Lyon et al., 286 Pa. 119, 133 A. 217.

Appellant contends that, though it could not ordinarily object to paying a tax on the "taxable asset," it is

not taxable now because appellant holds another asset (shares of stock in other corporations shown above) already taxed at $563,540.44. For convenience, we shall refer to it here as "tax-paid asset." In the stipulation, the parties fix the capital stock value at $425,000. Appellant therefore says that, as it holds assets that have been taxed at a value of $563,540, it should not now pay a tax on any part of that capital stock value of $425,000 on the ground that, if it does so, a part of the "tax-paid asset" will be taxed twice without authority. We cannot so interpret the record.

To appraise capital stock is to find a fact. As the evidence supports the appraisement of $21,314, on which the tax was levied, we must give effect to the finding. That effect is not destroyed by the relation of the "tax-paid asset" ($563,540) to what the parties said was the total capital stock valuation ($425,000) for the reason, as will appear, that they do not agree on the value of the constituent elements composing the total value stipulated. If the values of the taxable and tax-paid assets are by agreement contracted into a less sum to represent the capital stock value, each of those elements must be taken to be likewise proportionately contracted, so that, if part of the property is the amount of a tax-paid asset, it must be contracted in the same proportion when carried into the agreed capital stock value. Appellant's total assets are $593,295, composed of the "tax-paid asset" and the "taxable asset." Its debts are $92,513. If it paid all its debts, it would have net assets of $500,782 and, in addition, would have its franchises and corporate privileges which the statute requires to be considered in making the appraisement. Notwithstanding that financial condition and its obvious implications, the parties agreed that the capital stock value was only $425,000, a sum that would seem to be less than its value.

How then, must that agreement now be considered? When the parties proposed to agree on the capital stock value, they had, among others, two essential elements to

deal with; one was the "tax-paid asset"; the other was the "taxable asset." Since the "tax-paid asset" was not subject to a second tax, as the law then stood (see the Act of June 21, 1931, P. L. 685), it should have been so treated by the parties—if any agreement was to be made that would aid the court—that it could be eliminated, without dispute, in determining the capital stock value to which the five mills rate would be applied. In the absence of adequate agreement the fact must be determined by evidence, as, indeed, it was in this case. Mere agreement as to capital stock value alone is not sufficient if one party at the same time objects to the proportionate elimination of the "tax-paid asset" from the capital stock value proposed to be agreed upon. The contentions made in this case show that the value was fixed without providing for that elimination. As there is a "taxable asset," we cannot recognize appellant's claim of a right to deduct the amount of the "tax-paid asset" from the value agreed to, because that is not what the Commonwealth intended. The Commonwealth contends that the agreed value of $425,000 contains both the "tax-paid asset" and the "taxable asset," each dollar of the total being carried into the agreed value at the rate of 71.633 cents (425,000 divided by 563,540), the "tax-paid asset" shrinking to $403,150, and the "taxable asset" to $21,314. By taxing at the latter value, says the Commonwealth, no part of the "tax-paid asset" is taxed a second time. We can of course not accept the Commonwealth's interpretation, since that is not what appellant intended. In short, the parties have not agreed on all the elements constituting the ultimate fact—the capital stock value to which the tax rate is applicable. We must therefore lay aside that part of the stipulation, and have no difficulty in doing so in this case (without remitting the record for further hearing) because the learned court below has made the finding of fact, supported by the reports and the evidence of the witness, that the taxable value of the capital stock, in view of the "taxable asset,"

is $21,314 after eliminating the "tax-paid asset." A corporation having such shares is entitled to deduct, from its total assets, the value at which such shares have been taxed in the capital stock tax levied against the corporations that issued them. The remainder, with all other pertinent elements, becomes the basis of the capital stock valuation, determined as the statute requires, to which the tax rate is to be applied. It is perhaps needless to say that we are dealing now only with the elimination of the already taxed value of such shares of stock, and not with assets that are not taxable (cf. Com. v. Union Ship Building Co., 271 Pa. 403, 114 A. 257; Missouri v. Genner, 281 U. S. 313), or may be exempt from taxation for other reasons.

Judgment affirmed.

Mr. Justice SCHAFFER took no part in the consideration or decision of this case.